UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

Michael James Wells,

                                        Plaintiff,

        v.                                              8:26-CV-1144
                                                        (MAD/MJK)


Attorney Brian Barrett,

                                        Defendant.

_____

Michael James Wells, Plaintiff *pro se*

Mitchell J. Katz, U.S. Magistrate Judge

To the Honorable Mae A. D'Agostino, U.S. District Judge:

## ORDER AND REPORT- RECOMMENDATION

Wells began this action on May 29, 2026, by filing a Complaint.
(Dkt. 1). Wells also moved for leave to proceed *in forma pauperis* ("IFP")
and for the appointment of counsel. (Dkts. 2, 4). The Clerk has sent the
Complaint and those motions to this Court for review. (*Id.*). For the
reasons below, the Court grants Wells's motion for IFP status, denies
the motion for the appointment of counsel, and recommends the District
Court dismiss the Complaint.

1

## I.    BACKGROUND

### A. Facts

On June 22, 2025, Wells was arrested and charged with "Assault in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Menacing in the Second Degree." (Complaint, Dkt. 1, at ¶¶ 5, 6). Two days later, "a Grand Jury convened and indicted" Wells on all charges. (*Id.* at ¶7). After Wells ended the representation of two other non-party defense attorneys, Brian Barrett began representing Wells. (*Id.*).

Throughout his representation of Wells, Barrett "only came to see" Wells "2 times." (*Id.* at ¶8). Wells "requested that" Barrett "come and see him on numerous occasions" but Barrett "said he was just too busy." (*Id.*) (cleaned up). Wells "had a cell phone in the facility" and that cell phone contained evidence supporting Wells's self-defense, defense. (*Id.* at ¶9). But Barrett "never went to pick the phone up even when [Wells] signed the phone over to him to pick up." (*Id.*). Because Barrett "never picked the phone up, the phone was eventually destroyed by the facility . . .". (*Id.*) (cleaned up). Later, Wells was moved from St. Lawrence County Correctional Facility Special Housing Unit to Elmira Correctional Facility. (*Id.* at ¶10).

"On numerous occasions [Wells] asked [Barrett] to go interview . . . witnesses and see if they[] [would] be willing to" testify. (*Id.* at ¶11). "Barrett never contacted any" of the "7 witnesses" Wells identified. (*Id.*). Wells also asked Barrett "to go take pictures of the crime scene for trial" but Barrett "never went to take any pic[tures] and had no pictures for trial. . ." . (*Id.* at ¶13).

"At the start of . . . jury selection[,] . . . Barrett told the judge that he 'wasn't ready or prepared for trial'" (*Id.* at ¶12). The judge said "' he didn't care, trial would proceed without further delay.'" (*Id.* at ¶13) (cleaned up). During trial, Barrett told Wells "'we've won[,] if you and Brittney testify you'll only ruin the case." (*Id.* at ¶11) (cleaned up). All in all, Barrett "never came to see [Wells] to prepare for trial and that caused [Wells] to lose trial . . .". (*Id.* at ¶10).

### B. Procedural History

Now, Wells is suing Barrett, alleging Ineffective Assistance of Counsel under 42 U.S.C. §1983. (*Id.* at ¶¶1, 15-23). Wells requests "compensatory damages . . . in the amount of $25,000,000.00 and punitive damages in the amount of $10,000,000.00 plus costs and

3

attorney['s] fees, and to grant [Wells] a trial by jury of all issues so triable . . .". (*Id.* at ¶24) (cleaned up).

## II.    IFP APPLICATION

Wells declares in his IFP application that he is unable to pay the filing fee. (Dkt. 2). After reviewing his application, this Court finds Wells is financially eligible for IFP status.

## III.    STANDARD OF REVIEW

Courts must consider the sufficiency of the allegations set forth in the Complaint under 28 U.S.C. §§ 1915(e)(2) and 1915A. Section 1915(e)(2) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or

4

fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The term "prisoner" includes pretrial detainees. 28 U.S.C. § 1915A(c) (2006).

Second Circuit jurisprudence suggests that 28 U.S.C. 1915(e)(2)(B)'s review of pro complaints is a two-step inquiry.

At step one, courts apply the traditional special solicitude afforded to *pro se* plaintiffs. *See, e.g., Rosa v. Doe,* 86 F.4th 1001, 1007 (2d Cir. 2023). Indeed, courts are "obligated to afford a special solicitude to *pro se* litigants." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "The solicitude afforded to *pro se* litigants takes a variety of forms. It most often consists of liberal construction of pleadings" and "motion papers." *Id.* (cleaned up). So, at step one, courts must "'accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor.'" *White v. Schmidt*, No. 22-1267, 2024 WL 1266245, at *2 (2d Cir. Mar. 26, 2024) (summary order) (quoting *Harnage v. Lightner*, 916 F.3d 138, 140-41 (2d Cir. 2019)). And once the court has done so, it must then construe the *pro se* submission "to raise the

strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis removed).

At step two, courts subject the liberally construed pleading to Rule 8's pleading standard. *See, e.g., Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citing *Twombly Bell Atlantic v. Twombly*, 550 U.S. 544, (2005) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when affirming a district court's dismissal of the plaintiff's complaint under 28 U.S.C. 1915); *see also Edwards v. Erfe*, 588 F. App'x 79 (2d Cir. 2015) (summary order) (citing *Sykes* and affirming the District Court's *sua sponte* dismissal of a prisoner rights case); *Hirsch v. Rochester City Police Dep't*, 578 F. App'x 49, 50 (2d Cir. 2014) (summary order) (same in a civil rights case); *Sheehy v. Brown*, 335 F. App'x 102, 103 (2d Cir. 2009) (summary order) (citing *Iqbal* and affirming the District Court's dismissal of a claim under 20 U.S.C. §1915(e)(2)).

While the Second Circuit has never formally stated that Rule 8's pleading standard applies, the Court infers that the Second Circuit has adopted that position. To arrive at this conclusion, the Court focuses on two pieces of evidence. First, the Circuit's citations to *Iqbal* and *Twombly*—which clarified Rule 8s pleading standard. *See Sykes*, 723

F.3d at 403. Second, other circuit courts have authorized district courts to apply Rule 12(b)(6) when reviewing claims under §1915(e)(2)(B).[1] Nothing in the Second Circuit's jurisprudence leads this Court to believe that it would break stride with eight other circuit courts. This evidence, altogether, leads this Court to believe that the Second Circuit approves of this Court's application of Rule 12(b)(6)'s standard to §1915(e)(2)(B) reviews *after* applying special solicitude to the *pro se* submission.

When applying Rule 8 to pleadings, Courts' must determine if a claim is facially plausible. *See Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This means that *pro se* complaints, even while liberally construed, "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Skyes*, 723 F.3d at 403

---

[1] *See Herrera v. Agents of Pennsylvania Bd. of Prob. & Parole*, 132 F.4th 248, 254 n.5 (3d Cir. 2025) (applying Rule 12(b)(6)'s standard to §1915(e)(2)(B) review); *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (same); *Hale v. King*, 642 F.3d 492, 497 (5th Cir. 2011) (same); *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (same); *Coleman v. Lab. & Indus. Rev. Comm'n of Wisconsin*, 860 F.3d 461, 468 (7th Cir. 2017) (same); *Wilhelm v. Rotman,* 680 F.3d 1113 (9th Cir. 2012) (same) *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (same); *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (same).

(quoting *Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Indeed Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

In sum, the Court's role, when reviewing a Complaint under §1915(e)(2)(B), is two-fold. First, the Court must draw all inferences in the *pro se* plaintiff's favor and construe their submission to raise the strongest possible argument. Second, the Court must then review the Complaint and determine if it plausibly alleges enough facts for the Court to reasonably infer that the defendant would be liable for the alleged misconduct.

## IV. DISCUSSION

### A. Barrett is not a state actor, so Wells cannot use §1983 as a vehicle to bring his claim.

The District Court should dismiss Wells's Complaint *without prejudice* and *without leave to amend*. To plausibly allege a 42 U.S.C. §1983 violation, the plaintiff must show that the defendant deprived the plaintiff of their rights under the color of state law. In other words, the plaintiff must prove that the defendant was a state actor. Here, Wells

cannot plausibly allege that Barrett is a state actor. Thus, the Court recommend dismissing Wells's Complaint.

A §1983 violation occurs when "a person or persons acting under color of state law deprived a plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *McDarby v. Dinkins,* 907 F.2d 1334, 1336 (2d Cir.1990). To plausibly allege a §1983 claim, "the conduct at issue must have been committed by a person acting under color of state law." *DuBois v. Bedford-Flatbush Chiropractic, P.C.*, 409 F. Supp. 3d 62, 69 (E.D.N.Y. 2019). "For purposes of a § 1983 action, a defendant necessarily acts under color of state law when he abuses the position given to him by the State." L*ynch v. Southampton Animal Shelter Found. Inc.*, 971 F. Supp. 2d 340, 348 (E.D.N.Y. 2013). "Private actors are not liable under section 1983 unless the conduct allegedly causing the deprivation of a federal right can be fairly attributable to the State." *Id.* (cleaned up). Importantly, plaintiffs "bears the burden of proof to establish that the acts of private persons or entities constitute state action." *Omnipoint Commc'ns Inc. v. Comi*, 233 F. Supp. 2d 388, 394 (N.D.N.Y. 2002)

9

Wells's Complaint does not establish that the District Court has subject matter jurisdiction over this case. "[N]either public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position." *McCluskey v. New York State Unified Ct. Sys.*, No. 10-CV-2144, 2010 WL 2558624, at *6 (E.D.N.Y. June 17, 2010) (Bianco J.). But here, Wells is suing Barrett—an attorney who represented him in his criminal case—because he "didn't do a good job representing" Wells. (Complaint, Dkt. 1, at pg. 3). Worse yet, Wells's Complaint is devoid of any statements or evidence which plausibly suggest that Barrett was acting under the color of law. *See generally* (*Id.*). And because there is no allegation that Barrett was acted "under color of state law," he is "not subject to § 1983 liability." *Kash v. Honey,* 38 F. App'x 73, 76 (2d Cir. 2002) (summary order) (affirming the trial court's dismissal of plaintiff's claims against a private attorney). Because there is no state action, §1983 is not available to Wells. And because that is so, there is no federal question jurisdiction under 28 U.S.C. §1331. Without a federal question—and no allegations that the parties are diverse and the amount in controversy exceeds $75,000 establishing diversity

10

jurisdiction—the District Court has no jurisdiction to hear the case. Indeed, "'[f]ederal courts are courts of limited jurisdiction,' and may hear cases only where a federal question exists ('federal question jurisdiction') or there is diversity of the parties ('diversity jurisdiction')." *Shafik v. Aston Martin Lagonda of N. Am., Inc.*, 770 F. Supp. 3d 432, 441 (D. Conn. 2025) (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009)). Thus, the Court recommends the District Court dismiss the Complaint *without prejudice* and *without leave to amend. See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C.*, 565 F.3d at 64 ("Notwithstanding any prior proceedings, it is our obligation to raise the matter of subject matter jurisdiction *whenever* it appears from the pleadings or otherwise that jurisdiction is lacking."); *See Karupaiyan v. New York*, No. 23-1257-CV, 2024 WL 2174272, at *2 (2d Cir. May 15, 2024) (summary order) ("When subject matter jurisdiction is lacking, the district court lacks the power to adjudicate the merits of the case,

11

and accordingly Article III deprives federal courts of the power to dismiss the case with prejudice."(cleaned up)).

### B. Appointment of counsel is not warrant because Wells's case must be dismissed.

Wells's motion to appointment of counsel is denied as moot. "The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed." *Martin-Trigoa v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983). Because the Court recommends dismissal, there is no longer a controversy. And thus, this Court cannot compel the U.S. Marshal service to effectuate service.

## V.   CONCLUSION

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED** that the District Court:

1. **DISMISS** Wells's Complaint (Dkt. 1) without prejudice and without leave to amend; and
2. **DENY** Wells's motion to appoint counsel (Dkt. 4); and it is

**ORDERED**

1. that Wells's motion to proceed IFP (Dkt. 2) be **GRANTED**; and
2. that the Clerk provide Wells with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (*per curiam*); and Wells is

**REMINDED**

> that in accordance with 28 U.S.C. § 636(b)(1), they have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (*per curiam*)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72

Dated: June 12, 2026

_____
Hon. Mitchell J. Katz
U.S. Magistrate Judge

13

588 Fed.Appx. 79 (Mem)

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals,

Second Circuit.

M.A. EDWARDS, Plaintiff–Appellant,

v.

ERFE, Warden, Corrigan C.I.; Official, Individual, LaJoie, Complex Warden; Official, Individual, Sutherland, Correction Officer; Official and Individual, Lynn Milling, PoP Management; Official, Individual, Iozzia, Correction Officer; Official and Individual, Peck, Correction Officer; Official and Individual, Penn, Captain; Official and Individual, Defendants–Appellees.

No. 14–1597.
|
Jan. 8, 2015.

Appeal from a judgment and order of the United States District Court for the District of Connecticut (Alfred V. Covello, J.).

**Attorneys and Law Firms**

M.A. Edwards, Suffield, CT, pro se.

No Appearance, for Defendants–Appellees.

Present: GERARD E. LYNCH, DENNY CHIN, Circuit Judges, EDWARD KORMAN, [*] District Judge.

*SUMMARY ORDER*

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED.**

Appellant M.A. Edwards, proceeding pro se, appeals from the district court's judgment dismissing his 42 U.S.C. § 1983 complaint sua sponte and from the order denying reconsideration of that judgment. We assume the parties' familiarity with the underlying facts and procedural history.

We review a district court's sua sponte dismissal of a complaint de novo. *Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir.2013). Pro se submissions are generally reviewed with "special solicitude," and we interpret those submissions to raise the strongest claims suggested. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (per curiam). District courts should not dismiss a pro se complaint without granting leave to amend unless amendment would be futile. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

Edwards first argues that the district court erred in dismissing his due process claim based on his allegation that he was unlawfully deprived of his property. A prisoner may challenge the deprivation of property in a § 1983 action only if the State provides no adequate post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Connecticut provides inmates with a remedy for lost or destroyed property. Under Connecticut General Statutes § 4–141 *et seq.,* a person may bring a claim against the State to the Claims Commissioner unless, *inter alia,* the law establishes another administrative remedy for that claim. Conn. Gen.Stat. § 4–142. An inmate's property claim may not be brought directly to the Claims Commissioner because Connecticut Department of Corrections ("DOC") Administrative Directive 9.6(16)(B) establishes an administrative remedy for prisoners aggrieved by property loss or damage. However, if a prisoner exhausts his internal administrative remedy and the DOC's Lost Property Board ("LPB") denies his claim, he may then bring his claim to the Claims Commissioner, *see id.* at 9.6(16)(F), who, as **\*81** relevant here, may order relief or authorize suit, *see* Conn. Gen.Stat. § 4–158.

The district court properly ruled that Edwards's claim failed because he did not allege that the above process was inadequate. Arguably, the district court should not have dismissed the claim without providing Edwards an opportunity to amend. *See Cuoco,* 222 F.3d at 112. However, any error is harmless because Edwards's reconsideration motion sets out what he would have alleged had he been granted the opportunity to amend. *See Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,* 507 F.3d 117, 127 (2d Cir.2007). In that motion, Edwards argued that the postdeprivation remedy was inadequate because prison staff told him that the LPB required him to prove his ownership with a receipt of purchase. That allegation does not demonstrate that Edwards lacked an adequate state remedy because, irrespective of the LPB's methods of reaching its decision, he could seek relief from the Claims Commissioner, whose consideration of the issue would have been independent of the LPB's decision. Edwards suggests no reason, either in his reconsideration motion or on appeal, why the presentation of his claim to the Claims Commissioner would have been an inadequate remedy if the LPB were to have denied his claim.

Edwards also asserts that Connecticut's housing of sentenced with unsentenced inmates violates his constitutional rights as a sentenced inmate. However, the Fifth Circuit case relied on by Edwards postulates a due process right of pretrial detainees not to be housed indiscriminately with sentenced inmates, not the reverse. *See Jones v. Diamond,* 636 F.2d 1364, 1374 (5th Cir.1981), *overruled on other grounds by Int'l Woodworkers of Am. v. Champion Int'l Corp.,* 790 F.2d 1174 (5th Cir.1986). Whereas "[d]ue process requires that a pretrial detainee not be punished," a "sentenced inmate ... may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish,* 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Edwards' claim fails because he alleges no facts indicating that his housing with unsentenced inmates rather than sentenced inmates amounts to cruel and unusual punishment.

We need not consider whether Connecticut's housing practice violates the due process rights of pretrial detainees, because Edwards lacks standing to assert the rights of pretrial detainees. *See Ziemba v. Rell,* 409 F.3d 553, 555 (2d Cir.2005). We note, however, that two recent District of Connecticut decisions have held that this practice does not violate a pretrial detainee's due process rights "absent allegations that the pretrial detainee suffered an injury from being housed with one or more convicted inmates, or that the placement with convicted inmates was intended to punish the pretrial detainee." *Silvera v. Conn. Dep't of Corr.,* 726 F.Supp.2d 183, 197 (D.Conn.2010); *Woodhouse v. Carroll,* No. 3:08CV1092 (MRK), 2010 WL 3023888, at \*5 (D.Conn. Aug.2, 2010).

Lastly, Edwards contends that his double-bunking with another inmate violates his Eighth Amendment rights. That claim fails because double-bunking is not per se unconstitutional and Edwards has not alleged that the practice has "lead to deprivations of essential food, medical care, or sanitation," or to other conditions that rise to the level of cruel and unusual punishment. *Rhodes v. Chapman,* 452 U.S. 337, 344, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

We review the denial of a motion for reconsideration for abuse of discretion. *Simon v. City of N.Y.,* 727 F.3d 167, 171 (2d Cir.2013). "[R]econsideration will generally **\*82** be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995). Here, the district court properly declined to grant relief because the arguments and allegations raised in the reconsideration motion did not entitled Edwards to relief.

Finally, we note that appellees failed to file a brief in this appeal, despite requesting and receiving from this Court an extension of time in which to do so. In fact, since requesting an extension, appellees have made no filing with this Court whatsoever. While an appellee is of course under no obligation to submit a brief, the views of appellees will often be of assistance to the Court, especially in dealing with claims made by uncounseled appellants. Moreover, it is discourteous to request an extension only to then cease all communication without notifying the Court that the party has decided not to file a brief.

We have considered all of Edwards's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment and order of the district court.

## All Citations

588 Fed.Appx. 79 (Mem)

---

### Footnotes

\*      The Honorable Edward Korman, of the United States District Court for the Eastern District of New York, sitting by designation.

---

**End of Document**                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

578 Fed.Appx. 49

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter. RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE(WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals,
Second Circuit.

Nicholas J. HIRSCH, Plaintiff–Appellant,

v.

ROCHESTER CITY POLICE DEPARTMENT, et al., Defendants–Appellees.

No. 13–3002–cv.
|
Sept. 22, 2014.

Appeal from a judgment of the United States District Court for the Western District of New York (Charles J. Siragusa, Judge.). **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is AFFIRMED in part, VACATED in part, and the cause is **REMANDED** for further proceedings consistent with this order.

**Attorneys and Law Firms**

Nicholas J. Hirsch, Rochester, NY, pro se.

No Appearance.

PRESENT: JOSÉ A. CABRANES and RAYMOND J. LOHIER, JR., Circuit Judges, PAUL A. ENGELMAYER,[*] District Judge.

**\*50  SUMMARY ORDER**

Appellant Nicholas Hirsch, proceeding *pro se,* appeals from the District Court's judgment dismissing his lawsuit *sua sponte* and imposing a leave-to-file sanction. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

We review a district court's *sua sponte* dismissal of a complaint *de novo. Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d. Cir.2013). *Pro se* submissions are generally reviewed with "special solicitude," and we interpret those submissions to raise the strongest claims suggested. *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (per curiam) (quoting *Ruotolo v. I.R.S.,* 28 F.3d 6, 8 (2d Cir.1994)). District courts should generally not dismiss a *pro se* complaint without granting leave to amend. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000). However, leave to amend is unnecessary if amendment would be futile, *see id.,* or if the plaintiff "is an extremely litigious [litigant] who is quite familiar with the legal system and with pleading requirements," *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994).

Hirsch argues that the District Court erred in dismissing his complaint for his failure to respond to its order to show cause because he timely responded. Hirsch is correct, but remand is unwarranted. Res judicata barred his claims against the City of Rochester, the Rochester City Police Department, Officer Michael Johnson, and Officer Samuel Ognibene, as these defendants were all listed in Hirsch's previously-dismissed complaint. *See* Second Amended Complaint, *Hirsch v. City of Rochester,* No. 6:11–CV–6381 (W.D.N.Y. Feb. 17, 2012), ECF No. 56; *see also Monahan v. N.Y.C. Dep't of Corr.,* 214 F.3d 275, 284–91 (2d Cir.2000) (barring constitutional claims under the doctrine of res judicata). However, although Hirsch's previous complaint also listed six "John Does," it did not specifically list Officer Nina Nowack. His claims against Nowack were therefore not barred by res judicata. *Cf. Nagle v. Lee,* 807 F.2d 435, 440 (5th Cir.1987) (ruling that fictitiously named officers were not entitled to benefit of res judicata where they did not appear in the prior action and were never served). Nonetheless, Hirsch's most recent complaint failed to allege any facts suggesting that Nowack violated his federal or constitutional rights. Moreover, affording Hirsch an opportunity to amend would have been unnecessary in light of the litigant's history. The District Court's prior orders repeatedly and explicitly explained that complaints containing only conclusory legal assertions warrant dismissal. *See Davidson,* 32 F.3d at 31.

Turning to the leave-to-file sanction, we review a sanction order for an abuse of discretion. *See Chambers v. NASCO, Inc.,* 501 U.S. 32, 55, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *StreetEasy, Inc. v. Chertok,* 752 F.3d 298, 306–07 (2d Cir.2014). As the Supreme Court has noted, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers,* 501 U.S. at 44, 111 S.Ct. 2123. A court, however, may impose a filing injunction if confronted with "extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation ... or a failure to comply with sanctions imposed for such conduct." *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.,* 55 F.3d 34, 39 (2d Cir.1995) (quoting *Richardson Greenshields Sec., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987)). A "court may not impose a filing **\*51** injunction on a litigant sua sponte without providing the litigant with notice and an opportunity to be heard." *Iwachiw v. N.Y. State Dep't of Motor Vehicles,* 396 F.3d 525, 529 (2d Cir.2005) (quoting *Moates v. Barkley,* 147 F.3d 207, 208 (2d Cir.1998)). Here, Hirsch timely objected to the District Court's order to show cause why a leave-to-file sanction should not be imposed. That objection, however, was mistakenly docketed in another of Hirch's actions. Pl.'s Resp. & Cover Ltr., *Hirsch v. City of Rochester,* No. 6:12–CV–6525 (W.D.N.Y. Apr. 15, 2013), ECF Nos. 7–8. Because the District Court did not consider this objection, the sanction order is vacated, and the cause is remanded in order to provide Hirsch with an opportunity to be heard on this question. Of course, we intimate no view on whether the order would be appropriate in the circumstances presented.

We have considered Hirsch's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** in part, **VACATE** in part, and **REMAND** the cause for further proceedings consistent with this order.

## All Citations

578 Fed.Appx. 49

---

## Footnotes

| | |
|---|---|
| * | The Honorable Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation. |

---

**End of Document**                                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 8:26-cv-01144-MAD-MJK    Document 6    Filed 06/12/26    Page 19 of 41

Karupaiyan v. New York, Not Reported in Fed. Rptr. (2024)

2024 WL 2174272

2024 WL 2174272
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Palani KARUPAIYAN, Plaintiff-Appellant,

v.

State of NEW YORK, City of New York, New York City Police Department (NYPD), John Does Police Officers
of NYPD, Fredrick Dsouza, Pravin Pandey, Raja Pandey, Adar Management Corp., Defendants-Appellees.

23-1257-cv
|
May 15, 2024

Appeal from a judgment of the United States District Court for the Eastern District of New York (Ann M. Donnelly, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED IN PART, VACATED IN PART,** and **REMANDED** for further action consistent with this order.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Palani Karupaiyan, pro se, Philadelphia, PA.

For Defendants-Appellees: No appearance.

Present: Dennis Jacobs, William J. Nardini, Steven J. Menashi, Circuit Judges.

## SUMMARY ORDER

 **\*1** Plaintiff-Appellant Palani Karupaiyan, *pro se*, sued the State and City of New York, the New York City Police Department ("NYPD"), unnamed NYPD officers, three private individuals, and a real estate company under various federal and state causes of action. Karupaiyan's allegations stem from several disagreements and altercations with his co-tenants and his apartment's management company, as well as purported discrimination by New York City police officers who allegedly responded to his residence and arrested him after one of his co-tenants called 911 after an altercation. After granting Karupaiyan *in forma pauperis* status, the district court dismissed his complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim but permitted him leave to amend. *See Karupaiyan v. New York*, No. 23-CV-5424 (AMD) (LB), 2023 WL 9020011 (E.D.N.Y. Sept. 8, 2023). Instead of amending, Karupaiyan appealed. [1] We assume the parties' familiarity with the case.

### I. Forfeiture of Issues on Appeal

While we liberally construe *pro se* filings to raise the strongest arguments they suggest, *McLeod v. Jewish Guild for the Blind,* 864 F.3d 154, 156 (2d Cir. 2017), *pro se* appellants must still clearly state the issues on appeal in their briefs, *see Moates v. Barkley,* 147 F.3d 207, 209 (2d Cir. 1998). We normally do not decide issues that are not briefed. *Id.*; *see also LoSacco v. City of Middletown,* 71 F.3d 88, 93 (2d Cir. 1995) ("[W]e need not manufacture claims of error for an appellant proceeding *pro se* ...."). [2] Nor will we decide issues that a *pro se* appellant briefs only "in passing." *Gerstenbluth v. Credit Suisse Secs. (USA) LLC,* 728 F.3d 139, 142 n.4 (2d Cir. 2013).

Karupaiyan's brief largely fails to address the substance of the district court's decision dismissing his complaint. The only substantive grounds his brief could be read to raise are that Defendant-Appellee Fredrick Dsouza filed a "false charge" against

him and that his alleged arrest was discriminatory, which can be read to challenge the dismissal of his false arrest and malicious prosecution claims under 42 U.S.C. § 1983. We accordingly conclude that he has forfeited all other issues.

## II. *Sua Sponte* Dismissal

Karupaiyan appears to challenge the district court's *sua sponte* dismissal of his complaint under § 1915(e)(2)(B). While we have cautioned against *sua sponte* dismissals without notice and opportunity to be heard in certain contexts, *see Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 82–83 (2d Cir. 2018), the district court granted Karupaiyan leave to amend his complaint to fix the defects identified, but he did not take advantage of the offer. We discern no error in the *sua sponte* dismissal under these circumstances.

## III. Merits

 **\*2**  We review *de novo* Karupaiyan's challenge to the dismissal of his false arrest and malicious prosecution claims arising out of his alleged arrest. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). We conclude that he failed to state a claim for false arrest under 42 U.S.C. § 1983 against Fredrick Dsouza and Pravin Pandey because they are private citizens and did not act under color of state law. A private individual becomes a state actor for the purposes of § 1983 only when (1) the state compelled the conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public state function. *See Sybalski v. Indep. Group Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008). Filing a complaint with the police does not fit within any of these categories. *See Dahlberg v. Becker*, 748 F.2d 85, 93 (2d Cir. 1984) (holding that "mere invocation" of state legal procedures does not amount to state action under § 1983).

Karupaiyan also fails to plead a false arrest or malicious prosecution claim under § 1983 against NYPD officers or the City of New York, as he does not allege any facts showing that the officers lacked probable cause for the arrest, *see Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) ("Probable cause to arrest is a complete defense to an action for false arrest."), or that the criminal proceedings terminated in his favor, *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (requiring a plaintiff to plead "termination of the proceeding in [his] favor").

The remainder of Karupaiyan's brief seeks various remedies that are not related to any of the claims he raised below—for example, he seeks an order reorganizing the New York State Unified Court System. He points to no authority that would permit such relief, even assuming he had a meritorious claim.

## IV. Prejudice

Although Karupaiyan's claims against the State of New York fail, the district court erred by dismissing them with prejudice. The district court correctly dismissed these claims because New York is entitled to state sovereign immunity and has not waived that immunity. *See Karupaiyan*, 2023 WL 9020011, at \*2. The "constitutional principle of sovereign immunity" poses "a bar to federal jurisdiction over suits against nonconsenting States." *Alden v. Maine*, 527 U.S. 706, 730 (1999). "When subject matter jurisdiction is lacking, 'the district court lacks the power to adjudicate the merits of the case,' and accordingly 'Article III deprives federal courts of the power to dismiss the case with prejudice.' " *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1074 (2d Cir. 2021) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016)). Therefore, because the district court lacked jurisdiction over the claims against the State of New York, it was erroneous to dismiss those claims with prejudice rather than without prejudice.

The district court likewise erred by dismissing with prejudice Karupaiyan's landlord-tenant claims—other than those under the Fair Housing Act or 42 U.S.C. § 1981—pursuant to Federal Rule of Civil Procedure 12(h)(3). *See Karupaiyan*, 2023 WL 9020011, at \*5. Because Rule 12(h)(3) provides for dismissal for lack of subject matter jurisdiction, such a dismissal must be without prejudice. *See Green*, 16 F.4th at 1074. We therefore remand with instructions for the district court to modify its judgment to dismiss these claims without prejudice. *See Russo v. United States*, No. 22-1869, 2024 WL 726884, at \*2 (2d Cir. Feb. 22, 2024).

\* \* \*

We have considered Karupaiyan's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court in part, **VACATE** the judgment insofar as the district court dismissed with prejudice claims over which it lacked subject matter jurisdiction, and **REMAND** for the district court to amend its judgment to dismiss these claims without prejudice.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 2174272

---

**Footnotes**

1      Because the time to amend has long since run despite multiple extensions, the dismissal without prejudice has ripened into a final and appealable order over which we may exercise jurisdiction. *See* 28 U.S.C. § 1291; *Salmon v. Blesser,* 802 F.3d 249, 252 n.2 (2d Cir. 2015).

2      Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

38 Fed.Appx. 73

This case was not selected for publication in West's Federal Reporter.

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

United States Court of Appeals, Second Circuit.

Harvey KASH, Carl Lanzisera, and Julia Gambino, Plaintiffs–Appellants,

v.

Thomas HONEY, Individually and in his Official Capacity, Frank Incantalupo, Individually and in his Official Capacity, James Catterson, Individually and in his Official Capacity, Patrick Mercurio, Individually and in his Official Capacity, Defendants, A. Craig Purcell, Individually and in his Official Capacity, Defendant–Appellee, Edward Manzello, Individually and in his Official Capacity, Defendant–Counter–Defendant–Appellee.

Docket No. 01–7794

|

April 11, 2002.

**Synopsis**

Protesters at local bar association's Law Day event brought § 1983 action against bar president and police officer. The United States District Court for the Eastern District of New York, Thomas G. Platt, J., granted summary judgment for defendants, and appeal was taken. The Court of Appeals held that: (1) president was not state actor; (2) officer did not use unreasonable force when removing one protester; (3) officer's accidental elbowing of second protester was not violation of her substantive due process rights; and (4) officer did not violate protesters' First Amendment rights.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (6)

**[1]    Civil Rights  ⚷  Attorneys and witnesses**

Local bar association president could not be held liable under § 1983 for filing misdemeanor complaint against Law Day protestor involved in altercation with police officer, absent showing of state action; president was private citizen, and there was no evidence he conspired or acted jointly with officer. 42 U.S.C.A. § 1983.

4 Cases that cite this headnote

**[2]    Civil Rights  ⚷  Cooperation with state actor**

Private person does not act jointly with state actor, and thus does not incur § 1983 liability, merely by swearing to affidavit in accusatory instrument. 42 U.S.C.A. § 1983.

18 Cases that cite this headnote

**[3]    Search, Seizure, and Arrest** 🔑 Particular cases in general

Force used by police officer to restrain and remove protester from public event was objectively reasonable, under Fourth Amendment, and thus did not give rise to § 1983 liability; officer did not strike protester, even though he believed protester to be fighting back and attempting to grab his firearm, and he released protester after removing him from room. U.S.C.A. Const.Amend. 4; 42 U.S.C.A. § 1983.

**[4]    Constitutional Law** 🔑 Neglect or delay

**Municipal, County, and Local Government** 🔑 Arrest and detention; use of force

Police officer's unintentional elbowing of one protester's shoulder while attempting to restrain second protester did not so shock conscience of court as to amount to substantive due process violation, and thus did not give rise to § 1983 liability. U.S.C.A. Const.Amend. 5; 42 U.S.C.A. § 1983.

1 Case that cites this headnote

**[5]    Constitutional Law** 🔑 Protests and Demonstrations in General

**Municipal, County, and Local Government** 🔑 Police, Law Enforcement, and Public Safety

Police officer who removed protester could not be held liable under § 1983 for First Amendment violation absent evidence that conflict arose due to protester's attempt to engage in expressive activity; protester claimed that his movement toward Congressmen, which officer prevented, was not for purpose of speaking to them. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[6]    Constitutional Law** 🔑 Protests and Demonstrations in General

**Municipal, County, and Local Government** 🔑 Arrest and detention; use of force

Police officer who elbowed protester in alleged retaliation for having been embarrassed at prior event could not be held liable under § 1983 for First Amendment violation; officer's alleged motive was personal revenge, not deterrence of protester's political expression. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**\*74** Appeal from the United States District Court for the Eastern District of New York, Thomas G. Platt, Judge.

**Attorneys and Law Firms**

Arthur V. Graseck, Jr., Islip Terrace, NY, for Appellant.

Kevin G. McMorrow; Joseph M. O'Connor; Ahmuty, Demers & McManus, Albertson, NY, for Appellee A. Craig Purcell.

Daniel J. Chepatis, Assistant Solicitor General; Michael S. Belohlavek, Deputy Solicitor General, of counsel, for Eliot Spitzer, Attorney General of the State of New York, New York, NY, for Appellee Edward Manzello.

**\*75** Present OAKES, SACK, and BRIGHT, [*] Circuit Judges.

**WESTLAW**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of said district court, entered on February 21, 2001, be, and it hereby is, AFFIRMED.

Plaintiffs Harvey Kash, Carl Lanzisera, and Julia Gambino appeal from a judgment of the United States District Court for the Eastern District of New York (Thomas G. Platt, *Judge* ) granting summary judgment to defendants A. Craig Purcell and Edward Manzello.

The plaintiffs belong to Americans for Legal Reform ("ALR"), an organization that "seeks to bring about reform in the American legal system through political means." Compl. ¶ 18. They filed suit against the defendants under 42 U.S.C. § 1983 alleging violations of their constitutional rights under the First, Fifth, and Fourteenth Amendments.

Kash alleges that on April 29, 1996, at the Suffolk County Bar Association's annual "Law Day," defendant Edward Manzello, a security officer employed by the Suffolk County Unified Court System, employed excessive force against him in the course of preventing him from walking in the direction of Congressmen Rick Lazio and Michael Forbes, speakers at Law Day. He further alleges that, thereafter, defendant A. Craig Purcell, then president of the Suffolk Bar Association, maliciously caused to be filed a false misdemeanor complaint against him charging him with disorderly conduct; and that Purcell thereby intended, *inter alia,* to penalize Kash for attempting to exercise his First Amendment rights.

Gambino asserts that while attempting to extricate Kash from Manzello's restraint, Manzello elbowed her in the shoulder a few times. She conceded in her deposition that these strikes were "[n]ot intentional." Lanzisera alleges that sometime earlier on Law Day, as he passed by Manzello, Manzello elbowed him intentionally. Lanzisera speculates that Manzello did this because of an incident that occurred one year earlier. Lanzisera had been demonstrating at a courthouse, and Manzello took his sign. Lanzisera complained to Manzello's superior, who returned the sign to Lanzisera. This incident, Lanzisera believes, embarrassed Manzello.

The plaintiffs bring their claims under 42 U.S.C. § 1983. They therefore must establish that the defendants deprived them of rights "secured by the Constitution or laws of the United States," and that they did so "under color of state law." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

I. The Claim Against Purcell

 [1]    The plaintiffs' sole allegation against Purcell is that he "maliciously, for purpose or purposes personal to him, including the purpose of penalizing plaintiff KASH for exercising his First Amendment rights ... falsely charged HARVEY KASH in an accusatory instrument." Compl. ¶ 14.

The plaintiffs do not dispute that Purcell is a private attorney or that the Suffolk County Bar Association is a private not-for-profit organization that receives no governmental funding of any kind. The acts of private attorneys are not deemed to be "under color of state law," *see*  **\*76**  *Fine v. City of N.Y.,* 529 F.2d 70, 74 (2d Cir.1975), and "an otherwise private person acts 'under color of' state law" only if he or she "conspir[es] with state officials to deprive another of federal rights." *Tower v. Glover,* 467 U.S. 914, 920, 104 S.Ct. 2820, 81 L.Ed.2d 758 (1984).

The evidence shows that before the Law Day program began, Manzello informed Purcell that he had been assigned to provide security to certain judges there. No evidence suggests that Purcell conspired or acted jointly with Manzello. No evidence suggests that Purcell knew that the plaintiffs would be attending the Law Day program. The plaintiffs contend that Manzello and Purcell discussed ALR before Law Day, but they point to no evidence in the record to support that contention. A conclusory allegation that a private person acted jointly with a state actor fails to state a claim under § 1983, *see Spear v. Town of W. Hartford,* 954 F.2d 63, 68 (2d Cir.1992); *a fortiori* it fails to defeat a motion for summary judgment.

**[2]** Purcell also did not act jointly with a state actor merely by swearing to an affidavit in an accusatory instrument. Private misuse of an otherwise valid state statute is not state action. *Dahlberg v. Becker,* 748 F.2d 85, 90 (2d Cir.1984). Because none of Purcell's alleged conduct can be deemed "fairly attributable to the State," *Spear,* 954 F.2d at 68 (internal quotation marks and citations omitted), Purcell did not act "under color of state law" and therefore is not subject to § 1983 liability.

### II. The Claims Against Manzello

**[3]** To analyze excessive-force claims, we begin by "identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). " '[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' " *County of Sacramento v. Lewis,* 523 U.S. 833, 843, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (quoting *United States v. Lanier,* 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

Because Manzello's alleged use of force against Kash took place during a brief "seizure," we apply the Fourth Amendment's "reasonableness" standard and ask whether his "actions [were] 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Graham,* 490 U.S. at 397, 109 S.Ct. 1865.

Manzello, according to a police report he filed, perceived Kash's movement in the direction of Congressmen Forbes and Lazio as a threat. He responded by obstructing Kash's path with his back turned toward Kash. Kash does not dispute that he found his path obstructed by Manzello's back. He also does not dispute that after allegedly tapping Manzello on the shoulder and then speaking to Manzello in a loud voice, he attempted to maneuver himself past Manzello. Manzello then restrained Kash and removed him from the meeting hall. He did not strike Kash, even though Manzello believed Kash to be fighting back and attempting to grab his firearm. After successfully removing Kash from the room, Manzello released him. Deferring to the "judgment of [a] reasonable officer[ ] on the scene," who "reasonably, but mistakenly, believed that a suspect was likely to fight back," *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001), no reasonable jury could conclude that this brief and minimal use of force against Kash was objectively unreasonable.

**\*77** **[4]** Manzello's alleged uses of excessive force against Gambino and Lanzisera did not take place during a seizure. We therefore analyze them under the substantive due-process rubric, *see County of Sacramento,* 523 U.S. at 843–44, 118 S.Ct. 1708, and ask whether Manzello's conduct "shocks the conscience," *see id.* at 846–47, 118 S.Ct. 1708 (collecting cases). Manzello unintentionally elbowed Gambino in the shoulder while attempting to restrain Kash. He allegedly also intentionally elbowed Lanzisera. Neither sustained any injury. No reasonable jury could conclude that this conduct "shocks the conscience." *See id.*

**[5]** **[6]** Finally, the plaintiffs' First Amendment retaliation claims fail because they introduced no evidence that the alleged actions of Purcell and Manzello were motivated by their exercise of First Amendment rights. *See Curley v. Vill. of Suffern,* 268 F.3d 65, 73 (2d Cir.2001). In fact, the plaintiffs do not assert that they intended to or did engage in any expressive activity at the Law Day program. Kash testified that it was a coincidence that he had been walking in the direction of Congressmen Forbes and Lazio; he had intended only to get a cup of coffee from the refreshments table, not to speak to them or anyone else. Lanzisera speculates that Manzello elbowed him to retaliate for the alleged embarrassment that Lanzisera caused him on a previous occasion. Even if true, this would suggest the motive of personal vengeance. It would not raise a reasonable inference that Manzello intended to punish Lanzisera in order to deter the expression of ALR's views.

For the foregoing reasons, the judgment of the district court is hereby AFFIRMED.

**All Citations**

38 Fed.Appx. 73

## Footnotes

\*        Of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

**End of Document**                                                    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2558624
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Peter McCLUSKEY, Plaintiff,

v.

NEW YORK STATE UNIFIED COURT SYSTEM, Chief Judge Hon.
Jonathan Lippman, Gabor & Gabor, David Gabor, Hope Gabor, Defendants.

No. 10–CV–2144 (JFB)(ETB).
|
June 17, 2010.

**Attorneys and Law Firms**

Peter McCluskey, Lynbrook, NY, pro se.

Anne C. Leahey, New York State Attorney General's Office, Hauppauge, NY, Joan M. Faley, Labatte, Balkan, Colavita & Contini, LLP, Garden City, NY, for Defendant.

ORDER

JOSEPH F. BIANCO, District Judge.

 **\*1** *Pro se* plaintiff Peter McCluskey ("plaintiff") filed a complaint on May 11, 2010 against the defendants, New York State Unified Court System, Chief Judge Hon. Jonathan Lippman, Gabor & Gabor, David Gabor, and Hope Gabor (collectively "defendants").[1] The complaint purports to allege claims for deprivation of due process against the New York State Unified Court System and claims for malpractice against the Gabor defendants. For the reasons that follow, the Court dismisses the federal claims *sua sponte,* with prejudice, and declines to exercise supplemental jurisdiction over any state law claims plaintiff is attempting to assert.

I. Background

   A. *Facts*
Plaintiff's complaint invokes this Court's federal question jurisdiction pursuant to 28 U.S.C § 1331. Plaintiff's complaint alleges that the Gabor defendants represented plaintiff in a prior lawsuit against Suffolk County Community College. (Compl.¶¶ 9, 12.) In that underlying suit, the action was dismissed by Justice J. Jones Jr., who held that the "alleged fraud was related to breach of contract," and that "a fraud claim could have been maintained if the plaintiff had sought special damages caused by the fraudulent misrepresentation and not recoverable in a breach of contract." (*Id.* ¶ 13.) Accordingly, plaintiff's fraud claims against Suffolk Community College were dismissed.

Plaintiff thereafter filed a legal malpractice action against the Gabor defendants in the New York Supreme Court, Nassau County, 07/2978, arising out of the underlying representation. (*Id.* ¶¶ 9, 14.) The complaint filed by plaintiff against the Gabor defendants alleged malpractice for their failure to seek special damages and failure to appeal the dismissal of the underlying fraud

2010 WL 2558624

claim. (*Id.* ¶ 14.) On January 25, 2008, State Supreme Court Justice Honorable Arthur M. Diamond dismissed the malpractice claim premised upon the Gabor defendants' failure to seek special damages because Justice Diamond found that "Gabor had sufficiently submitted evidence of special damages"; however, plaintiff's malpractice claim premised upon the failure to appeal the dismissal of the fraud claim was not dismissed. (*Id.* ¶ 16.)

On April 7, 2009, the New York State Appellate Division, Second Department, reversed in part Justice Diamond's order and dismissed plaintiff's remaining malpractice claim, finding that plaintiff could not establish that the defendants committed malpractice by failing to take an appeal from that order. *McCluskey v. Gabor & Gabor,* 61 A.D.3d 646, 876 N.Y.S.2d 162, 164 (App.Div.2009). (*Id.* § 18.) According to the complaint, Justice Diamond thereafter reversed the Appellate Division's April 7, 2009 order's finding of law with respect to special damages. Specifically, plaintiff alleges that, on August 28, 2009, Justice Diamond "adhered to his original determination" that the Gabor defendants had submitted adequate evidence of special damages.[2] (*See id.* ¶ 19, 876 N.Y.S.2d 162.) Thus, Justice Diamond denied plaintiff's motion requesting reinstatement of the claim against the Gabor defendants for failing to seek special damages. (*Id.* ¶ 20, 876 N.Y.S.2d 162.) Plaintiff appealed the August 28, 2009 order, but was denied review by the Appellate Division. (*Id.* ¶¶ 21–22.) Plaintiff thereafter filed a notice of appeal to the New York Court of Appeals, but the Court of Appeals dismissed that appeal. (*Id.* ¶ 23, 876 N.Y.S.2d 162.) Specifically, plaintiff alleges that "[a]t a session of the court of appeals on April 6, 2010, Chief Judge Lippman presiding, plaintiff's appeal was dismissed by the court on its own motion for the reason that an appeal from the December 23, 2009 order was not within its jurisdiction"; further, plaintiff contends that Chief Judge Lippman "failed to take any administrative action pursuant to his policy responsibility to address the alleged unconstitutional discrimination practiced against pro se litigants in his lower courts." (*Id.* ¶¶ 54–55.)

**\*2** Plaintiff then filed a motion, pursuant to New York C.P.L.R. § 5015(a)(5) and C.P.L.R. § 2221(e), for an order that would "implement the appellate determination by reinstating the special damages claim." (*Id.* ¶ 26, 876 N.Y.S.2d 162.) Plaintiff alleges that, at the conference held to discuss plaintiff's motion, "Justice Diamond pressured plaintiff by intimidation to withdraw the motion under the threat of sanctions." (*Id.* ¶¶ 27, 29.) Plaintiff's motion was denied on August 28, 2009, on the grounds that the Gabor defendants had submitted sufficient evidence of special damages in the underlying action. (*Id.* ¶ 30, 876 N.Y.S.2d 162.) Plaintiff alleges that this ruling deprived him of due process, and further contends that he was discriminated against throughout the proceedings because he was a *pro se* litigant. (*Id.* ¶¶ 31–36.)

As a second cause of action in the instant complaint, plaintiff alleges negligence and malpractice by the Gabor defendants. Specifically, plaintiff alleges that the Gabor defendants, representing plaintiff in the underlying state court action, failed to seek special damages or appeal the dismissal of the fraud allegations. (*Id.* ¶¶ 60–61.) These are the same claims raised by plaintiff in his state court action against these defendants.

### B. *Procedural History*

Plaintiff filed the instant action on May 11, 2010. By letter dated May 27, 2010, the Gabor defendants filed a letter requesting a pre-motion conference in anticipation of filing a motion to dismiss the instant action based on the statute of limitations, *res judicata,* and the *Rooker–Feldman* doctrine. By Order dated May 27, 2010, this Court ordered plaintiff to file a letter with the Court addressing why the federal claims asserted in his complaint should not be dismissed by the Court *sua sponte* based on the absolute immunity of Chief Judge Jonathan Lippman, the sovereign immunity afforded to the New York State Unified Court System, and the lack of state action upon which to premise liability under 42 U.S.C. § 1983 and the Fourteenth Amendment for defendants Gabor & Gabor, David Gabor, and Hope Gabor. By letter dated June 8, 2010, defendants Chief Judge Jonathan Lippman and the New York State Unified Court System also requested a pre-motion conference in order to file a motion to dismiss based on judicial immunity, sovereign immunity, and the *Rooker–Feldman* doctrine. Plaintiff responded to the Court's Order by letter on June 7, 2010. The Court has fully considered plaintiff's submission, as well as the letter submissions of the defendants.

### II. Standard of Review

2010 WL 2558624

Courts are obliged to construe the pleadings of a *pro se* plaintiff liberally. *Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir.2008); *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," courts must grant leave to amend the complaint. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

**\*3** "An action is 'frivolous' when either: (1) 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy;' or (2) 'the claim is based on an indisputably meritless legal theory.' " *Olushina v. Gonzalez,* No. 06–CV–4030 (JG), 2006 WL 2927158, at \*2 (E.D.N.Y. Oct.11, 2006) (dismissing *sua sponte* § 1983 claim against defense attorney for lack of state action) (quoting *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998)).

Similarly, a complaint fails to state a claim for which relief can be granted when it does not "allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.' " *See Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,* 595 F.3d 86, 91 (2d Cir.2010) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570; *see also Peterec–Tolino v. N.Y.,* No. 08–4732–cv, 2010 WL 445643, at \*1–2 (2d Cir. Feb.8, 2010) (summary order) (affirming district court's *sua sponte* dismissal of § 1983 claims because, *inter alia,* certain defendants were not state actors).

"[A]ny party or the court *sua sponte,* at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction." *United Food & Commercial Workers Union, Local 919, AFL–CIO v. Center Mark Prop. Meriden Square, Inc.,* 30 F.3d 298, 301 (2d Cir.1994) (quoting *Manway Constr. Co. v. Horn. Auth. of Hartford,* 711 F.2d 501, 503 (2d Cir.1983) (internal quotation omitted)). Courts may also dismiss sua sponte claims that are barred by sovereign immunity or judicial immunity. *Matter of Application of the Camardo Law Firm, P.C. v. Dep't of the Army,* No. 5:09–CV–654 (FJS/GHL), 2010 WL 1935868, at \*2 (N.D.N.Y. May 11, 2010) ("Although the parties do not address this point, the Court, at any time, can sua sponte raise the issue of subject matter jurisdiction or sovereign immunity." (citing *Grupo Dataflux v. Atlas Global Group, L.P.,* 541 U.S. 567, 593, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) and *Warren v. United States,* No. 06–CV–0226S, 2009 WL 1663991, at \*2 (W.D.N.Y. June 15, 2009)). Finally, it is not inappropriate for a court to dismiss a claim under Section 1983 where there is no conceivable basis to find that the defendant was a state actor. *See Sommer v. Rankin,* 449 F.Supp. 66, 67 (E.D.N.Y.1978) ("In this case, the claim of state action, which is essential to the invocation of [§ ] 1983, is clearly frivolous. This court cannot believe that the Court of Appeals intended that sua sponte dismissal should be avoided even in cases such as this, where there is no conceivable basis for liability under § 1983. Accordingly, the court is of the opinion that in this particular case, such dismissal would not be inappropriate."); *see also Walton v. Breeyear,* No. 9:05–CV–0194 (LEK/DEP), 2007 WL446010, at \*5 n. 12 (N.D.N.Y. Feb. 8, 2007); *Mendlow v. Seven Locks Facility,* 86 F.Supp.2d 55, 59 n. 1 (D.Conn.2000).

III. Discussion

**\*4** The Court liberally construes plaintiff's *pro se* complaint to attempt to assert a Fourteenth Amendment Due Process claim pursuant to § 1983 against each of the defendants, as well as a state law malpractice and negligence claim against the Gabor defendants. The Court addresses each in turn.

A. *Section 1983 Due Process Claims*

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

2010 WL 2558624

*See* 42 U.S.C. § 1983.

Thus, to state a claim under Section 1983, a plaintiff must allege two elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a deprivation of his rights or privileges as secured by the Constitution of the United States. *See Annis v. County of Westchester,* 136 F.3d 239, 245 (2d Cir.1998). Here, plaintiff alleges due process violations under the Fourteenth Amendment by New York State Court of Appeals Chief Judge Jonathan Lippman, by the New York State Unified Court System, and by the Gabor defendants. The Court examines plaintiff's federal claims against each of these defendants in turn and determines that plaintiff's claims must be dismissed.

### 1. The Claims Against Chief Judge Jonathan Lippman

Under the doctrine of absolute judicial immunity, judges are subject to suit only for: (1) "non-judicial actions, *i.e.,* actions not taken in the judge's judicial capacity;" or (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (internal citations omitted); *see Stump v. Sparkman,* 435 U.S. 349, 355–56, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge " 'be deprived of immunity because the action he took was in error ... or was in excess of his authority.' " *Mireles,* 502 U.S. at 11, 12 (quoting *Stump,* 435 U.S. at 356).

Here, plaintiff fails to allege any actions by Chief Judge Lippman that were performed in his personal capacity or that were performed outside the scope of his jurisdiction. The only allegations against Chief Judge Lippman in the complaint state that "[a]t a session of the court of appeals on April 6, 2010, Chief Judge Lippman presiding, plaintiff's appeal was dismissed by the court on its own motion for the reason that an appeal from the December 23, 2009 order was not within its jurisdiction," and that Chief Judge Lippman "failed to take any administrative action pursuant to his policy responsibility to address the alleged unconstitutional discrimination practiced against pro se litigants in his lower courts." (Compl.¶¶ 54–55.)

**\*5** Although plaintiff alleges that the acts of Chief Judge Lippman "were outside the exercise of his judicial functions," (PL's Letter at 3), the actions that plaintiff alleges pertaining to Chief Judge Lippman are judicial actions, taken in his judicial capacity as Chief Judge of the New York State Court of Appeals. In fact, the complaint acknowledges that "[t]he auspices of the Chief Judge of the State Unified Court System include the supervision, administration and operation of State Courts in accordance with the New York State Constitution." (*Id.* ¶ 4.) Judges have traditionally enjoyed absolute immunity for damages arising out of judicial acts performed in their judicial capacities. *See Mireles v. Waco,* 502 U.S. 9, 11–12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991); *Fields v. Soloff,* 920 F.2d 1114, 1119 (2d Cir.1990) ("A judge defending against a section 1983 suit is entitled to absolute immunity from damages for actions performed in his judicial capacity."); *accord Perez v. Cuomo,* No. 09–CV–1109 (SLT), 2009 WL 1046137, at *4 (E.D.N.Y. Apr.17, 2009). "[I]f the relevant action is judicial in nature, the judge is immune so long as [the action] was not taken in the complete absence of jurisdiction." *Huminski v. Corsones,* 396 F.3d 53, 75 (2d Cir.2004) (citing *Mireles,* 502 U.S. at 11–12). Plaintiff's § 1983 claim against Chief Judge Lippman is plainly barred by the doctrine of absolute judicial immunity because the claim concerns the Chief Judge's actions while presiding over a session of the Court of Appeals on April 6, 2010. Specifically, plaintiff merely alleges that the Chief Judge dismissed plaintiff's appeal from the December 23, 2009 order because it was determined to be outside the Court of Appeals' jurisdiction. Chief Judge Lippman's actions constituted judicial acts well within his jurisdiction. Given a most liberal reading, plaintiff's claims against the defendant judge cannot be sustained, and the § 1983 claim is dismissed as to Chief Judge Lippman.

### 2. The Claims Against the New York State Unified Court System

Plaintiff's complaint does not allege any specific allegations against the New York State Unified Court System. Nonetheless, the Court construes plaintiff's complaint as attempting to state a claim for violation of his Fourteenth Amendment rights by the New York State Unified Court System.

The Eleventh Amendment to the United States Constitution provides:

McCluskey v. New York State Unified Court System, Not Reported in F.Supp.2d (2010)
2010 WL 2558624

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "The reach of the Eleventh Amendment has ... been interpreted to extend beyond the terms of its text to bar suits in federal courts against states, by their own citizens or by foreign sovereigns." *State Emples. Bargaining Agent Coalition v. Rowland,* 494 F.3d 71, 95 (2d Cir.2007) (quoting *W. Mohegan Tribe & Nation v. Orange County,* 395 F.3d 18, 20 (2d Cir.2004)). Absent a state's consent to suit or an express statutory waiver, the Eleventh Amendment bars federal court claims against states. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). "Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit." *FMC v. S.C. State Ports Auth.,* 535 U.S. 743, 766, 122 S.Ct. 1864, 152 L.Ed.2d 962 (2002).

**\*6** As agencies or arms of the State of New York, its courts are immune from suit under the Eleventh Amendment. *See Saint–Fleur v. City of N.Y.,* No. 99 Civ. 10433(WHP)(AJP), 2000 WL 280328, at *2 (S.D.N.Y. Mar. 14, 2000) (collecting cases); *Fields v. Walthers,* No. 94–CV–1659, 1997 WL 204308, at *2 (N.D.N.Y. Apr. 5, 1997) ("For Eleventh Amendment purposes, governmental entities of the state that are considered 'arms of the state' receive Eleventh Amendment immunity."). In a case similar to the instant case, in which a plaintiff alleged several claims against New York state courts, a court in this district held that sovereign immunity barred the action:

In the present case, New York State has not consented to suit. Moreover, lawsuits against state officers acting [in] their official capacity and lawsuits against state courts are considered to be lawsuits against the state. *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70–71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Abrahams,* 473 F.Supp.2d at 563 (citing *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065 (2d Cir.1989)). Thus, plaintiff's claims against New York State, its officers, and its courts may only proceed if they are brought pursuant to a valid Congressional abrogation of state immunity.

*McNamara v. Kaye,* No. 06–CV–5169 (DLI)(CLP), 2008 WL 3836024, at *8 (E.D.N.Y. Aug. 13, 2008). This Court agrees with that analysis. Accordingly, plaintiff's federal claims against the New York State Unified Court System are barred by sovereign immunity, and must be dismissed. [3]

*3. The Claims Against the Gabor Defendants*

An individual acts under color of state law when he or she exercises power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson,* 454 U.S. 312, 317–18, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *United States v. Classic,* 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)). In the instant action, it is clear from the allegations of the complaint that the Gabor defendants do not qualify as state actors within the meaning of § 1983. To that end, it is axiomatic that neither public defenders, such as Legal Aid attorneys, nor court-appointed counsel, nor private attorneys, act under the color of state law merely by virtue of their position. *Polk County,* 454 U.S. at 325 (stating that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Grant v. Hubert,* No. 09–CV–1051, 2009 WL 764559, at *1 (E.D.N.Y. Mar. 20, 2009) ("It is well settled that private attorneys do not act under color of state law and are not state actors simply by virtue of their state-issued licenses to practice law."); *see also Rodriguez v. Weprin,* 116 F.3d 62, 65–66 (2d Cir.1997) (affirming dismissal of § 1983 claim against court-appointed appellate attorney for alleged involvement in denial of speedy appeal and noting that

2010 WL 2558624

"it is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983" (collecting cases)). Thus, plaintiff's claim is both frivolous—because the legal theory on which it is based is "indisputably meritless"—and fails to state a claim for which relief can be granted because plaintiff cannot assert a plausible § 1983 claim against his attorney. *See Kash v. Honey,* 38 F. App'x 73, 75–76 (2d Cir.2002) (concluding that there was no state action by a private lawyer who plaintiff alleged "maliciously, for purpose or purposes personal to him, including the purpose of penalizing [plaintiff] for exercising his First Amendment rights ... falsely charged [plaintiff] in an accusatory instrument"); *Licari v. Voog,* No. 08–4920–pr, 2010 WL 1647456, at *1 (2d Cir. Apr.26, 2010) (affirming district court's sua sponte dismissal of § 1983 claim against defense attorney because claim was frivolous under § 1915(e)(2)(B)(i)).

**\*7** Plaintiff argues that the complaint does not premise liability for the Gabor defendants under 42 U.S.C. § 1983, but rather alleges that the action is brought under the Fourteenth Amendment. However, the Fourteenth Amendment "applies to acts of the states, not to acts of private persons or entities." *Rendell–Baker v. Kohn,* 457 U.S. 830, 837–38, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). Accordingly, if plaintiff's claims against the Gabor defendants are not brought under § 1983, there is still no basis for relief. Thus, any purported federal claims against the Gabor defendants are dismissed because none of the Gabor defendants was a state actor. [4]

B. *State Law Claims*

Having determined that plaintiff's federal claims do not survive defendants' motions to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.' " *Birch v. Pioneer Credit Recovery, Inc.,* No. 06–CV–6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.,* 784 F.2d 44, 53 (2d Cir.1986)).

Therefore, in the instant case, the Court, in its discretion, " 'decline[s] to exercise supplemental jurisdiction' " over plaintiff's state law claims because "it 'has dismissed all claims over which it has original jurisdiction.' " *Kolari v. N.Y.-Presbyterian Hosp.,* 455 F.3d 118, 122 (2d Cir.2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.,* 514 F.3d 240, 250 (2d Cir.2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.,* No. 99 Civ. 3608(WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over any remaining state law claims given the absence of any federal claims that survive.

IV. Leave to Replead

The Court has considered affording plaintiff an opportunity to amend the complaint, *For man v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), but declines to do so, finding that the deficiencies therein are not such that could be cured by amending the complaint. *O'Hara v. Weeks Marine, Inc.,* 294 F.3d 55, 69 (2d Cir.2002).

V. Conclusion

**\*8** For the reasons set forth above, plaintiff's federal claims are dismissed *sua sponte* with prejudice, as they are barred by the doctrines of judicial immunity, sovereign immunity, and the *Rooker–Feldman* doctrine. Furthermore, the Court declines to exercise supplemental jurisdiction over plaintiff's purely state law claims in the absence of any federal claims.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2558624

---

**Footnotes**

1    For ease of reference, Gabor & Gabor, David Gabor, and Hope Gabor are referred to collectively as the "Gabor defendants."

2    Plaintiff's complaint does not make it clear how Justice Diamond's August 28, 2009 opinion was inconsistent with the Appellate Division's decision. Upon review of the Appellate Division's opinion, it appears that the Appellate Division only reversed Justice Diamond's order insofar as it failed to dismiss plaintiff's claims against the Gabor defendants for failure to pursue an appeal. Justice Diamond's August 28, 2009 Order noted this, specifically: "[c]ontrary to plaintiff's argument, Justice Jones did not determine that defendants failed to offer evidence of special damages in the underlying action. Rather, Justice Jones appears to have overlooked the evidence of plaintiff's taking the HB Studios course and its relevance to the special damages issue. Perhaps because neither Justice Jones nor this court considered the HB Studios course, the Appellate Division failed to discuss this evidence in granting summary judgment to defendants with respect to the failure to appeal malpractice claim. Nevertheless, plaintiff has failed to establish that this court overlooked or misapprehended any matter of fact or law which would change its prior determination with respect to the failure to offer evidence of special damages malpractice claim." (Gabor Defs.' Ex. E at 4.) Justice Diamond's opinion further notes "[a]s a preliminary matter, the court notes that its granting of summary judgment to defendants with respect to the malpractice claim based upon failure to offer evidence of special damages was not before the Appellate Division." (*Id.* at 5.)

3    The cases cited by plaintiff on this issue are inapposite. Plaintiff relies on cases that involve judicial review of agency factual findings and interpretations of statutes or regulations. *See, e.g., Kurcsics v. Merchants Mut. Ins. Co.,* 49 N.Y.2d 451, 426 N.Y.S.2d 454, 403 N.E.2d 159 (N.Y.1980); *N.Y. Times Co. v. City of N.Y. Comm'n on Human Rights,* 41 N.Y.2d 345, 393 N.Y.S.2d 312, 361 N.E.2d 963 (N.Y.1977). Moreover, *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), discusses whether a state that terminates public assistance payments to a particular recipient without affording him the opportunity for an evidentiary hearing prior to termination denies the recipient procedural due process in violation of the Fourteenth Amendment. *Id.* at 255. Here, by contrast, plaintiff was not denied a hearing, but rather was afforded several opportunities to be heard in court.

4    To the extent that plaintiff attempts to assert some other federal claim against the Gabor defendants, such a claim would be barred by the *Rooker–Feldman* doctrine. Pursuant to the *Rooker–Feldman* doctrine, "lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment," *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir.1998) (discussing *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923); and *Dist. of Colombia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)), or if the federal claim asserted is "inextricably intertwined" with an earlier state-court judgment, *Abrahams v. Appellate Div. of Supreme Court,* 473 F.Supp.2d 550, 555 (S.D.N.Y.2007)

McCluskey v. New York State Unified Court System, Not Reported in F.Supp.2d (2010)
2010 WL 2558624

(citations omitted). Second Circuit and Supreme Court precedent instructs that four requirements must be met in order for the *Rooker–Feldman* doctrine to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)). In the present case, plaintiff seeks review of the state courts' decisions regarding his malpractice claims against the Gabor defendants. Plaintiff's allegations against the Gabor defendants largely reiterate the claims that plaintiff made against the Gabor defendants in the original state court malpractice action, which was dismissed on the merits in state court. *See McCluskey v. Gabor & Gabor,* 61 A.D.3d 646, 876 N.Y.S.2d 162 (App.Div.2009); *McCluskey v. Gabor & Gabor,* 856 N.Y.S.2d 499 (Sup.Ct.2008); *see also* (Gabor Defs.' Ex. E.). These allegations are an attempt by plaintiff to invite this Court to review and reject those earlier state court judgments. Plaintiff's state law malpractice claims fit squarely within the boundaries of the *Rooker–Feldman* doctrine. Accordingly, plaintiff's claims should also be dismissed on this ground.

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

335 Fed.Appx. 102
This case was not selected for publication in West's Federal Reporter.
United States Court of Appeals,
Second Circuit.

Sandra SHEEHY, et al., Plaintiffs–Appellants,

v.

Thomas P. BROWN, et al., Defendants–Appellees.

No. 08–0102–cv.
|
June 23, 2009.

**Synopsis**
**Background:** Plaintiffs appealed, pro se, a judgment of the United States District Court for the Western District of New York, Telesca, J., sua sponte dismissing their complaint.

**Holdings:** The Court of Appeals held that:

[1] plaintiffs failed to establish § 1983 claims arising out of their allegedly false prosecutions, and

[2] plaintiffs failed to state a claim for conspiracy to interfere with civil rights.

Affirmed.

West Headnotes (2)

**[1]** **Civil Rights** 👉 Criminal prosecutions

Plaintiffs failed to allege that their convictions or sentences were invalidated or otherwise expunged, as required to establish § 1983 claims arising out of their allegedly false prosecutions. 42 U.S.C.A. § 1983.

61 Cases that cite this headnote

**[2]** **Conspiracy** 👉 Civil rights conspiracies

Plaintiffs failed to allege the formation of a conspiracy, and overt acts in furtherance of such conspiracy, as required to state a claim for conspiracy to interfere with civil rights. 42 U.S.C.A. § 1985.

424 Cases that cite this headnote

**\*103** **UPON DUE CONSIDERATION,** it is hereby **ORDERED, ADJUDGED AND DECREED** that the judgment of the district court is **AFFIRMED.**

Case 8:26-cv-01144-MAD-MJK    Document 6    Filed 06/12/26    Page 36 of 41

**Attorneys and Law Firms**

Sandra Sheehy, pro se.

Robert Sheehy, pro se.

Patrick Sheehy, pro se.

Bobbi Sheehy, pro se.

Billie Sheehy, pro se.

Casey Sheehy, pro se.

Sherry Sheehy, pro se.

PRESENT: Hon. PIERRE N. LEVAL, Hon. ROSEMARY S. POOLER and Hon. B.D. PARKER, Circuit Judges.

### *SUMMARY ORDER*

**\*\*1**  Plaintiffs–Appellants Sandra, Robert, Patrick, Bobbi, Billie, Casey, and Sherri Sheehy, *pro se,* appeal from the judgment of the United States District Court for the Western District of New York (Telesca, J.), *sua sponte* dismissing the complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). We assume the parties' familiarity with the facts, procedural history and issues on appeal.

Having reviewed *de novo* the district court's *sua sponte* dismissal under § 1915(e), *see Giano v. Goord,* 250 F.3d 146, 149–50 (2d Cir.2001), we conclude that the district court did not err in dismissing Appellants' complaint.

**[1]**  First, any 42 U.S.C. § 1981 or § 1983 claim against Appellees Lucy or Edward Sherwood, Thomas Fuoco, Mark Wattenberg, or Steve Presutti was properly dismissed, as private actors and institutions generally are not proper § 1983 defendants. *See American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (§ 1983 actions do not reach purely private conduct). Additionally, for an individual to recover damages for an allegedly unconstitutional conviction or imprisonment, he or she "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal ... or called into question by a federal court's issuance of a writ of habeas corpus...." *Heck v. Humphrey,* 512 U.S. 477, 486–87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Thus, any § 1983 claims arising out of the allegedly false prosecutions of Sandra, Patrick, or Robert Sheehy were appropriately dismissed, as Appellants did not allege that their convictions or sentences were invalidated or otherwise expunged. *Id.*

**\*104**  As for the American Society for the Prevention of Cruelty to Animals, the Allegany County Society for the Prevention of Cruelty to Animals, and Appellee Presutti, claims against these defendants were properly dismissed, as Appellants did not allege any wrongdoing on their part or specify how they were involved in the constitutional violations alleged. *See* 28 U.S.C. § 1915(e)(2). Next, to the extent that Appellants challenge the conduct of county district attorneys or state court judges, such actors are entitled to immunity. *Nixon v. Fitzgerald,* 457 U.S. 731, 766, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

Appellants also assert § 1983 claims against: (1) county sanitation workers for entering the Sheehys' property, in violation of their property and privacy rights; (2) state troopers for use of excessive force and retaliation; and (3) Allegany County Department of Social Services employees for entering the Sheehys' property and removing the Sheehy children from their homes, in violation of their First, Fourth, and Ninth Amendment rights. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "demands more than an unadorned,

the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* ——— U.S. ———, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted). We conclude that because the Appellants' § 1983 allegations are so vague as to fail to give the defendants adequate notice of the claims against them, the district court did not err in dismissing them.

 **\*\*2** **[2]**    Appellants also assert claims under § 1985, for which a plaintiff must allege: (1) a conspiracy, (2) which has an intent or purpose to deprive a person of equal protection of the law; (3) an act in furtherance of the conspiracy; (4) which results in an injury to a person, or a person's property, or the deprivation of a federal constitutional right. *See Mian v. Donaldson, Lufkin & Jenrette Securities Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993) (per curiam). Here, the Appellants' claims of conspiracy failed to specifically allege (1) the formation of a conspiracy; or (2) overt acts in furtherance of such conspiracy. Thus, the district court correctly dismissed any claims brought pursuant to §§ 1985 and 1986.

To the extent that Appellants assert claims based on the violation of federal criminal statutes, such as 18 U.S.C. §§ 241–242, these claims are not cognizable, as federal criminal statutes do not provide private causes of action. *See Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 511 (2d Cir.1994). In addition, any claim brought under 42 U.S.C. § 2000d, which prohibits the exclusion of individuals from a federally funded program or activity on the basis of race, color, or national origin, properly was dismissed, as Appellants did not allege that they were excluded from a federally funded program or activity and, thus, no claim exists under that statute. Similarly, although former 42 U.S.C. § 13981 authorized a cause of action arising out of a crime of violence motivated by gender, the Supreme Court has held that statute unconstitutional. *See United States v. Morrison,* 529 U.S. 598, 601, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000).

We have reviewed Appellants' remaining arguments and find them to be without merit. We also note here that we see no **\*105** indication in the record that Appellants perfected service on any of the defendants in this case.

Therefore, for the reasons stated above, the judgment of the district court is AFFIRMED.

### All Citations

335 Fed.Appx. 102, 2009 WL 1762856

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 8:26-cv-01144-MAD-MJK   Document 6   Filed 06/12/26   Page 38 of 41

2024 WL 1266245
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Paul WHITE, Plaintiff-Appellant,

v.

Sandra SCHMIDT, aka Sandra Kroger Schmidt, aka Sandra K. Schmidt, Defendant-Appellee,

Pat Doe, (1–10), Defendants.

Paul White, Plaintiff-Appellant,

v.

Teodocia Santos, Ella Abney, Personally and as Executrix of

the Estate of Albert Abney, Pat Doe, Defendants-Appellees. [*]

22-1267, 22-1911
|
March 26, 2024

Appeals from judgments of the United States District Court for the Northern District of New York (Mae A. D'Agostino, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Paul White, pro se, Coxsackie, NY.

FOR DEFENDANTS-APPELLEES: No appearance.

PRESENT: ROBERT D. SACK, WILLIAM J. NARDINI, MYRNA PÉREZ, Circuit Judges.

## SUMMARY ORDER

**\*1**

\* \* \*

Plaintiff-Appellant Paul White, *pro se* and incarcerated, appeals from the April 26, 2022, and August 1, 2022, *sua sponte* dismissals of two federal lawsuits (Mae A. D'Agostino, *District Judge*), each pursuant to the *Rooker-Feldman* doctrine. White's appeals have been considered in tandem and consolidated for disposition. In 2015, White was convicted in New York state court of grand larceny and fraud, stemming from a scheme to defraud investors in a North Carolina real estate development. *See Spota v. White*, No. 29681-12, 2016 WL 6427362, at *2, 4 (N.Y. Sup. Ct. Suffolk Cnty. Oct. 28, 2016) (explaining the background of the criminal case in a decision on a civil forfeiture proceeding). The Supreme Court, Suffolk County, awarded $2.975 million in restitution to his victims, who included Sandra Schmidt, Teodocia Santos, and Ella and Albert Abney (the "Abneys"). *Id.* at *2. White's appeal of the criminal judgment is, as of the time of writing, still pending.

In 2014, the Suffolk County District Attorney's Office brought a civil forfeiture action against White and obtained a $2.4 million judgment. *Id.* at *4, 9. After the judgment was entered, White retained an attorney who obtained a decision in a North

Carolina court, which he claims held that the investors had received their bargained-for-benefit, consisting of the validly deeded ownership of the property.

In 2017, White sued Schmidt and the Abneys in the Eastern District of New York, claiming that they had provided false statements to the Suffolk County District Attorney's Office and had testified falsely at grand jury proceedings and at his criminal trial, which resulted in their unjust enrichment by virtue of the restitution judgment that had been entered in their favor. In two different orders, the Eastern District dismissed the action, reasoning that the defendants were entitled to witness immunity, and in the alternative, the court lacked subject matter jurisdiction to entertain the unjust enrichment claim under *Rooker-Feldman*. *See generally White v. Abney*, No. 17-cv-4286, 2020 WL 5848647 (E.D.N.Y. Sept. 30, 2020); *White v. Abney*, No. 17-cv-4286, 2021 WL 1176218 (E.D.N.Y. Mar. 29, 2021).

In 2021, White filed the actions underlying these appeals. He sued Schmidt in the Northern District of New York, claiming that the restitution judgment had been satisfied by the North Carolina decision and that she had been unjustly enriched by a sum that he had separately paid to her. In a separate action, he sued Santos and the Abneys, raising substantially identical claims.

In 2022, the district court *sua sponte* dismissed each action as barred under the *Rooker-Feldman* doctrine and, alternatively, by collateral estoppel or *res judicata*, based on the preclusive effect of the Eastern District's earlier *Rooker-Feldman* procedural holding. *See generally White v. Schmidt*, No. 21-cv-854, 2022 WL 1222805 (N.D.N.Y. Apr. 26, 2022); *White v. Santos*, No. 21-cv-417, 2022 WL 3025723 (N.D.N.Y. Aug. 1, 2022). White timely appealed. We assume the parties' familiarity with the case.

 **\*2**  We review *de novo* a *sua sponte* dismissal of a complaint, including a dismissal based on collateral estoppel, *res judicata*, or lack of subject matter jurisdiction under *Rooker-Feldman*. *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*sua sponte* dismissal); *Comput. Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir. 1997) (collateral estoppel and *res judicata*); *Edwards v. McMillen Cap., LLC*, 952 F.3d 32, 35 (2d Cir. 2020) (*Rooker-Feldman*). When reviewing a *sua sponte* dismissal, we "accept all of the facts alleged in the complaint as true and draw all inferences in the plaintiff's favor." *Harnage v. Lightner*, 916 F.3d 138, 140–41 (2d Cir. 2019). [1]

Recognizing the "special solicitude" this Court must afford *pro se* litigants, *see Rosa v. Doe*, 86 F.4th 1001, 1007 (2d Cir. 2023), we nevertheless conclude that White's claims against Schmidt and the Abneys are barred by *res judicata*, or claim preclusion. "[C]laim preclusion ... operates in two ways: (1) it bars claims that were brought and decided in a prior litigation; and (2) it bars all other claims relating to the same transaction against the same defendant that could have been brought at that time." *N. Assurance Co. of Am. v. Square D Co.*, 201 F.3d 84, 87 (2d Cir. 2000). *White v. Abney* involved claims by White against Schmidt and the Abneys, so claim preclusion bars him from now raising any claims "relating to the same transaction ... that could have been brought" at the time he filed suit in *White v. Abney. Id.* White alleges that the following had occurred before he filed his complaint in *White v. Abney*: (1) the Suffolk County Court entered restitution judgments in favor of Santos, the Abneys, and Schmidt against White, (2) White obtained a decision from the North Carolina Superior Court determining that the defendants in these cases held valid deeds for the properties at issue, and (3) White paid approximately $31,000 each to Schmidt and the Abneys in partial satisfaction of the restitution judgments.

In the present cases, White seeks a declaratory judgment that the Suffolk County Court restitution judgments against him were satisfied by the North Carolina decision, and a return of the money he has paid to the defendants based on a theory of unjust enrichment distinct from the theory of unjust enrichment White relied on in *White v. Abney*. However, because White allegedly paid the defendants a partial restitution before the North Carolina decision was issued, and the North Carolina decision was issued before White initiated *White v. Abney*, White could have included his current claims for declaratory relief and unjust enrichment against Schmidt and the Abneys in *White v. Abney*. Accordingly, White's claims against Schmidt and the Abneys are barred by *res judicata*.

Santos, however, was not included as a defendant in *White v. Abney*, so claim preclusion cannot apply to White's current claims against Santos. *See N. Assurance*, 201 F.3d at 87. We therefore consider whether White's claims against Santos are barred under

the *Rooker-Feldman* doctrine or collateral estoppel, as the district court found. We determine that they are not. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). For a federal court to abstain under *Rooker-Feldman*,

> **\*3** (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state-court judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.

*Plymouth Venture Partners, II, L.P. v. GTR Source, LLC*, 988 F.3d 634, 641 (2d Cir. 2021). Here, the relevant state-court judgment is the criminal restitution judgment, which White alleges has been satisfied, not the civil forfeiture judgment. The civil forfeiture court did not address White's challenge to the restitution order, explaining instead that White's challenge was an improper collateral attack on the criminal conviction, which had to be raised instead on direct criminal appeal. *See Spota*, 2016 WL 6427362, at \*4. Thus, if White is complaining of an injury from a state-court judgment, the relevant judgment is the criminal restitution judgment.

The application of *Rooker-Feldman* here was improper because the criminal restitution judgment was not final at the time the federal lawsuit commenced. In *Hunter v. McMahon*, 75 F.4th 62, 65, 67, 70–71 (2d Cir. 2023), this Court concluded that the *Rooker-Feldman* doctrine could not apply when an appeal remains pending in state court at the time a complaint is filed, because *Rooker-Feldman* applies only after state-court proceedings have "ended." Because White's criminal appeal remains pending, the relevant state court proceeding had not concluded before White filed his complaint. Accordingly, the district court erred by dismissing the complaint based on *Rooker-Feldman*.

Although the district court alternatively dismissed the complaint on the basis of collateral estoppel, we do not affirm on this ground. In *White v. Abney*, the Eastern District dismissed White's complaint against Schmidt under the *Rooker-Feldman* doctrine. *Abney*, 2020 WL 5848647, at \*7. While collateral estoppel can bar reconsideration even of erroneous prior rulings, our decision in *Hunter* amounted to a significant clarification of our law on this fairly significant issue of *Rooker-Feldman*'s proper scope. *See Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) ("[E]ven where the specified elements of collateral estoppel are present, reexamination of a legal issue is appropriate where there has been a change in the legal landscape after the decision claimed to have preclusive effect."). Accordingly, we do not affirm the judgment based on the preclusive effect that the *Rooker-Feldman* holding in *White v. Abney* might have.

\* \* \*

In sum, the district court erred by relying on the *Rooker-Feldman* doctrine to *sua sponte* dismiss White's complaints. We decline to affirm on the alternative grounds of collateral estoppel. However, the district court's judgments with respect to Schmidt and the Abneys can be affirmed on the alternative ground of *res judicata.* We express no view on the merits (or lack thereof) of the underlying suit against Santos, which is better addressed by the district court in the first instance.[2] Therefore, the judgments of the district court are **AFFIRMED IN PART** and **VACATED IN PART** and **REMANDED** for further proceedings.

**All Citations**

Not Reported in Fed. Rptr., 2024 WL 1266245

Case 8:26-cv-01144-MAD-MJK   Document 6   Filed 06/12/26   Page 41 of 41

**Footnotes**

\*      The Clerk of Court is directed to consolidate these appeals for purposes of decision.

1      Unless otherwise indicated, case quotations omit all internal quotation marks, alteration marks, footnotes, and citations.

2      We acknowledge that the district court may decide that a stay is warranted pending the outcome of the criminal restitution judgment appeal. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) ("Comity or abstention doctrines may, in various circumstances, permit or require the federal court to stay ... the federal action in favor of the state-court litigation.").

**End of Document** <span style="float:right">© 2026 Thomson Reuters. No claim to original U.S. Government Works.</span>